**BERVAR & JONES**
Birney B. Bervar, bbb@bervar-jones.com (Hawaii Bar No. 5482)
Alakea Corporate Tower
1100 Alakea Street, 20th Floor
Honolulu, Hawaii 96813
(808) 550-4990

**BURSOR & FISHER, P.A.**
L. Timothy Fisher, ltfisher@bursor.com (*Pro Hac Vice* pending)
Blair E. Reed, breed@bursor.com (*Pro Hac Vice* pending )
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455

**REICH RADCLIFFE & HOOVER LLP**
Marc G. Reich, mgr@reichradcliffe.com (*Pro Hac Vice* pending )
Adam T. Hoover, adhoover@reichradcliffe.com (*Pro Hac Vice* pending )
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Telephone: (949) 975-0512

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| ANDREW CHUNG on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>HAWAIIAN ISLES KONA COFFEE COMPANY, LTD.<br><br>Defendant. | Case No.<br>Civil<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Andrew Chung ("Plaintiff"), individually and on behalf of other similarly situated individuals, brings the following Class Action Complaint against Defendant Hawaiian Isles Kona Coffee Company, LTD. ("Hawaiian Isles" or Defendant) seeking monetary damages, injunctive relief, and other remedies. Plaintiff makes the following allegations based on the investigation of his counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on his personal knowledge.

## INTRODUCTION

1.      Through false and deceptive packaging and advertising, Defendant intentionally misled consumers into believing that coffee products it sells bearing the word Kona originated from the Kona District of the Big Island of Hawaii (the "Kona District"). In reality, these coffee products are mostly or exclusively comprised of commodity beans and/or beans from less-desirable regions.

2.      The falsely advertised coffee products at issue in this action include, but are not limited to, "Kona Classic," "Kona Sunrise," "Kona Hazelnut," and "Kona Vanilla Macadamia Nut" coffee products (hereinafter, referred to as the "Kona Labeled Coffee Products" or "Products").

3.      At all relevant times, Defendant packaged, advertised, marketed, distributed, and sold the Kona Labeled Coffee Products to consumers via retail stores throughout the United States based on the misrepresentation that the Products were solely grown in, and originated from, the Kona District. In truth, the vast majority of the coffee used in the Kona Labeled Products was not grown in the Kona District.

4.      Kona coffee, renowned for its distinctive flavor and aroma, is one of the most famous and revered specialty coffees in the world. But only coffee grown on farms located within the Kona District of the Big Island of Hawaii can be truthfully marketed, labeled, and sold as Kona coffee. The volcanic soil, the elevation, and the

humidity of this region combine to give Kona coffee its distinctive characteristics. The term "Kona" tells consumers its coffee comes from this distinctive and desirable geographic region.

5.      Plaintiff and other consumers purchased the Kona Labeled Coffee Products because they reasonably believed, based on Defendant's packaging and advertising that all the coffee contained in the Products were grown in the Kona District.  Had Plaintiff and other consumers known that the coffee used in Kona Labeled Coffee Products was not all grown in the Kona District, they would not have purchased the Products or would have paid significantly less for them.  As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

6.      Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the Kona Labeled Coffee Products during the relevant statute of limitations period for violations of Hawaii's consumer protection laws, including Hawaii's Unfair and Deceptive Acts or Practices, H.R.S. §§ 480-1 *et seq.*, ("UDAP"), Hawaii's False Advertising Law, H.R.S. §§ 708- 871 ("Hawaii FAL"), Hawaii's Uniform Deceptive Trade Practice Act H.R.S. §§ 481A *et seq*. ("UDTPA"), and H.R.S. § 708-871.5 (False Labeling of Hawaii-Grown Coffee Law) as well as for fraud, negligent misrepresentation, unjust enrichment, and breach of express warranty.

7.      Plaintiff seeks to represent a Nationwide Class and a Hawaii Subclass.

8.      As a result of the unlawful scheme alleged herein, Defendant has been able to overcharge Plaintiff and other consumers for coffee, induce purchases that would otherwise not have occurred, and/or obtain wrongful profits.  Defendant's misconduct has caused Plaintiff and other consumers to suffer monetary damages. Plaintiff, on behalf of himself and other similarly situated consumers, seeks

damages, restitution, declaratory and injunctive relief, and all other remedies
provided by applicable law or that this Court deems appropriate.

## JURISDICTION AND VENUE

9.    This Court has personal jurisdiction over Defendant.  Defendant
purposefully avails itself of the Hawaii consumer market and distributes the
Products to numerous retail locations throughout Hawaii, where the Products are
purchased by consumers every week.

10.    This Court has original subject-matter jurisdiction over this proposed
class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the
Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction
of the federal courts in any class action in which at least 100 members are in the
proposed plaintiff class, any member of the plaintiff class is a citizen of a State
different from any defendant, and the matter in controversy exceeds the sum of
$5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims
of individual members of the proposed Class (as defined herein) are well in excess
of $5,000,000.00 in the aggregate, exclusive of interest and costs.

11.    Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial
acts in furtherance of the alleged improper conduct, including the dissemination of
false and misleading information and omissions regarding the Kona Labeled Coffee
Products, occurred within this District.

## PARTIES

12.    Plaintiff Andrew Chung ("Mr. Chung", or "Plaintiff") presently resides
in New York.  During the relevant class period, he has regularly purchased the Kona
Labeled Coffee Products, including but not limited to the "Kona Classic" brand,
approximately twice a year while visiting family in Hawaii.  Mr. Chung purchased
the Kona Labeled Coffee Products from CVS and/or Longs stores in Hawaii in or
around November 2016, January 2017, August 2017, and January 2018.

13.    In purchasing the Kona Labeled Coffee Products, Mr. Chung saw and relied on Defendant's false, misleading, and deceptive use of the word "Kona" on the packaging of the Kona Labeled Coffee Products.  Based on these representations, Mr. Chung believed that each of the Kona Labeled Coffee Products he purchased consisted solely of coffee grown in the Kona District on the Big Island of Hawaii.  However, unbeknownst to Mr. Chung, none or almost none of the coffee contained in the Kona Labeled Coffee Products he purchased were grown in, nor originated from, the Kona District; instead, the products are mostly or exclusively comprised of commodity beans and/or beans from less-desirable regions.

14.    Mr. Chung would not have purchased the Kona Labeled Coffee Products or would have paid significantly less for the Products had he known that all the coffee contained in the Products was not grown in the Kona District.  Therefore, Mr. Chung suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and fraudulent practices, as described herein.  Despite being misled by Defendant, Mr. Chung would be interested in purchasing the Kona Labeled Coffee Products if they are advertised accurately and contained 100% coffee grown in the Kona District of Hawaii.  While Mr. Chung currently believes that the Kona Labeled Coffee Products are not grown in the Kona District of Hawaii, he lacks personal knowledge as to Defendant's growing and advertising practices, which may have changed over time, leaving room for doubt in his mind as to which Products are grown in Kona.

15.    Defendant Hawaiian Isles Kona Coffee Company, LTD. ("Hawaiian Isles" or "Defendant"), is a Hawaii limited liability company with its principal place of business in Honolulu, Hawaii.  Hawaiian Isles sells a variety of coffee products throughout the United States, including this Judicial District, through various retail outlets, including but not limited to CVS and Longs.  During the relevant time period, Hawaiian Isles falsely designated the geographic origin of its "Kona" coffee

PAGE 4
CLASS ACTION COMPLAINT

products with the prominent placement of "Kona" on the front of the packaging. Hawaiian Isles advertised its coffee products nationally on the Internet and with digital marketing campaigns through social media sites such as Facebook.

## FACTUAL ALLEGATIONS

### A.    Background



**Figure 1**

16.    Kona coffee is one of the rarest and most prized coffees in the world. Kona coffee is grown in the Kona District on the Big Island of Hawaii (the "Kona District"). *See* Figure 1 above. *See also* Hawaii Administrative Rules ("HAR") §4-143-3 (defining the geographic region of Kona as the "North Kona and South Kona districts on the island of Hawaii, as designated by the State of Hawaii Tax Map"). The Kona District contains only 3,800 acres of land cultivated for Kona coffee production, which sharply limits the amount of Kona coffee that can be grown.

17.    Just as only sparkling wine originating from the Champagne region of France can be sold as "Champagne," only coffee grown in the Kona District can be sold as Kona coffee. *See, e.g.,* HAR §4-143-3 ("'Kona coffee' means natural coffee

… which is grown in the geographic region of Kona and which at least meets the minimum requirements of Kona prime green coffee."). Coffee grown outside of the Kona District, even if grown within the state of Hawaii, cannot be sold as Kona coffee. *See, e.g.,* HAR §4-143-1 ("The use of any geographic origin defined in section 4-143-3 [on coffee] that is not grown in the geographic region defined in section 4-143-3 is prohibited.").

18.    Kona coffee has been grown in the Kona District since 1828. The Kona District's volcanic soil, elevation, rainfall, proximity to the Pacific Ocean, moderate temperatures, and sunshine all interact to create Kona coffee's distinctive characteristics. Kona coffee's unique flavor, aroma, and mouth feel are a direct result of this growing environment.

19.    The Kona name tells consumers that they are buying coffee grown in the Kona District. The name also tells consumers that the coffee has a distinctive flavor profile, and that the beans are of the highest quality. Consequently, consumers have been willing to pay a premium for Kona coffee.

20.    Within the Kona District, between 600 and 1,000 farmers grow Kona coffee beans. The typical Kona farmer cultivates no more than five acres, which is a very small farming operation. These farms typically operate as family businesses.

21.    Kona farmers produce approximately 2.7 million pounds of green Kona coffee each year. That compares to 20 billion pounds of green coffee produced worldwide. In other words, authentic Kona represents approximately 0.01% of worldwide coffee production. It is truly a premium product.

22.    But even though only **2.7** million pounds of authentic green Kona coffee is grown annually, over **20** million pounds of coffee labeled as "Kona" is sold at retail. That is physically impossible.

23.    Defendant sold packaged coffee products that were presented to consumers as Kona coffee, but that actually contained beans that were either

commodity beans or otherwise sourced from less desirable growing regions.  Some packages contained trace amounts of Kona coffee, while other packages contained no Kona coffee at all.

24.     The malicious actions taken by Defendant caused significant harm to consumers.  Plaintiff and other consumers purchased the Kona Labeled Coffee Products because they reasonably believed, based on Defendant's packaging and advertising that the Products were grown in the Kona District.  Had Plaintiff and other consumers known that the Kona Labeled Coffee Products were not grown in the Kona District, they would not have purchased the Products or would have paid significantly less for them.  As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

**B.    Elemental Testing of Coffee**

25.     A putative class action on behalf of Kona coffee growers entitled *Corker, et al. v. Costco Wholesale Corporation, et al.*, Case 2:19-cv-00290 (W.D. Wash. Feb. 27, 2019) has used modern chemistry to identify the bad actors in the Kona marketplace specifically identifying Defendant.  *See* ECF No. 1 ¶¶ 51-126.

26.     Kona coffee is grown in a very specific geographic area on the Big Island of Hawaii.  That geographic area has a distinctive soil composition, due largely to its proximity to volcanoes.  And that geographic area has distinctive humidity and rainfall, due largely to its proximity to the Pacific Ocean.

27.     As a result of the local soil and rainfall, certain elements are present in high concentrations in Kona coffee beans.  If a particular package of coffee truly contains Kona coffee beans, these elements tend to be present in high concentrations.  If these elements are not present in high concentrations, then the package is unlikely to contain Kona coffee.

28.     Moreover, as a direct result of the local soil and rainfall, certain elements are **not** present in high concentrations in Kona coffee beans.  If a particular

package of coffee truly contains only Kona coffee beans, then these elements tend **not** to be present in high concentrations.  If they are present in high concentrations, then the package is unlikely to contain Kona coffee.

29.    Scientists can examine the concentration of each of the elements that are found in Kona coffee beans, as well as the concentration of each of the elements that are **not** found in Kona coffee beans.  By combining this information, scientists can determine with high confidence whether a particular package is authentic Kona coffee.

30.    In practice, instead of looking at the concentration of an isolated element like barium (Ba) or nickel (Ni), scientists examine the ***ratio*** of the concentrations of ***pairs*** of elements.  The reason for this approach is simple.  If you were to roast coffee beans for ten minutes longer, you would not impact the amount of barium or nickel in the sample, but you would burn away more of the overall coffee bean.  The concentration of barium would therefore increase, since it is defined as the mass of barium divided by the mass of the total bean.  And the concentration of nickel would therefore increase, since it is defined as the mass of nickel divided by the mass of the total bean.  But the ratio of the concentration of barium to the concentration of nickel would be unchanged.  And since the lab does not know how long particular coffee samples were roasted by the Defendant, the scientists focus on measures that do not change with roasting.

31.    Having tested barium and nickel, scientists have determined that authentic Kona coffee has a ratio of the concentration of barium to the concentration of nickel, also called the relative concentration, that falls within a certain range.  If an unknown sample has a relative concentration within that range, it may or may not be Kona.  But if an unknown sample has a relative concentration clearly outside that range, it is highly unlikely to be Kona.  (This analysis makes intuitive sense.  A veterinarian knows that dogs weigh between 1 and 325 pounds.  If that veterinarian

sees an animal that weighs 100 pounds, which is clearly in the range of observed dog weights, the veterinarian would say that the animal may or may not be a dog.  But if that veterinarian sees an animal that weigh 500 pounds, which is well outside the range of previously-observed dog weights, the veterinarian would immediately note that the animal is highly unlikely to be a dog.).

32.     Determining the concentrations of particular elements and isotopes (which are simply variations of a particular element) is a process that requires significant scientific expertise and expensive instrumentation.  The scientific techniques of elemental analysis and isotopic analysis[1] are widely accepted in the scientific community and have been used in studies of various food products including coffee).

33.     It is important to recognize that Defendant (who is likely to protest any and all aspects of scientific testing) could prove its innocence without retaining a single scientist, and without conducting a single lab test.  Defendant could simply provide evidence of where it bought legitimate Kona coffee that it has been selling at retail.

34.     It is also important to recognize that Defendant is a sophisticated participant in the premium coffee marketplace.  On information and belief, Defendant employs professional coffee buyers whose job function is to source coffees for its products.  In other words, much like a professional jeweler could never plausibly claim to be confused about the difference between a Rolex and a Timex, Defendant cannot plausibly claim to be confused about the coffee it is procuring.  Defendant knows exactly what it is buying, and what it is selling.

---

[1] Two different types of isotopic testing have been performed to confirm whether a defendant has falsely designated Kona as the origin of its coffee products.  The first test examined strontium isotopes, and the second test examined hydrogen and oxygen isotopes.

**C.    Defendant's Wrongful Acts**

35.    Hawaiian Isles falsely designated the geographic origin of its "Kona" coffee products with the prominent placement of "Kona" on the front of the packaging.  Hawaiian Isles advertised its coffee products nationally on the Internet and with digital marketing campaigns through social media sites such as Facebook. With its marketing campaigns, Hawaiian Isles used deceptive taglines and slogans such as "Taste the Kona Difference," "Bring Hawaii Home," "Give the Gift of Aloha," "Drink Kona Coffee and Relax," and "I Want My Toes in the Sand and Kona Coffee in My Hand," among others.  The deceptive slogans were designed to mislead consumers into believing that Hawaiian Isles coffee products primarily contain coffee from Hawaii, and more specifically the Kona District of Hawaii.  In addition, Hawaiian Isles used deceptive names for its products intended to mislead consumers into believing that the coffee products consisted solely of or contained a significant amount of Kona coffee.  The deceptive product names include "KONA CLASSIC," "KONA SUNRISE," "KONA HAZELNUT," and "KONA VANILLA MACADAMIA NUT."  Hawaiian Isles also designed its product packaging with imagery, text, and advertising slogans intended to mislead the consumer into believing that the coffee product contained coffee beans predominantly, if not exclusively, grown in Hawaii, and specifically in the Kona District.  The deceptive marketing slogans, product names, and package designs were all intended to trade off the reputation and goodwill of the Kona name.  Defendant deliberately misled the consumer into believing that Hawaiian Isles coffee products contained significant amounts of premium Kona coffee beans to justify the high price Hawaiian Isles charged for ordinary less-desirable and/or lower-quality coffee.

36.    Below are several examples of the deceptive "Kona" products sold by Hawaiian Isles.  The packages themselves state "Made in Hawaii" on a banner on the front, above a map of Hawaii and a photograph of palm trees at sunset.  The

marketing copy on the side of the package stated that the contents were "freshly
roasted and packaged in Hawaii."  The package also stated that "Kona Coffee is
grown on the Big Island's Kona Coast."  Given Hawaiian Isles' unequivocal
designation of Kona" as the origin of the coffee in its products, consumers buying
these products would reasonably believe that Kona, and only Kona, was the origin of
the coffee contained therein.




**Figure 2**                         **Figure 3**

37.    But while consumers would reasonably believe that the packages in
Figures 2 and 3 contain coffee that originates exclusively from Kona, the lab tests
tell a different story.  On the below scatter plot showing the strontium-to-zinc ratio
and the barium-to-nickel ratio, these accused products (marked by red diamonds) are
well outside the range of authentic Kona.  In other words, the science indicates that
the coffee contained in the Hawaiian Isles packages was highly unlikely to originate
from Kona.



**Figure 4**

The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona.  Again, the science indicates that the coffee contained in the Hawaiian Isles packages was highly unlikely to originate from Kona.  In other words, Hawaiian Isles' designation of Kona as the origin of the coffee in these products was false.



38.    In fact, these bags appear to have contained very little Kona coffee, if any.  As a simple indicator, note that authentic Kona had an average of less than forty times (40x) as much manganese as nickel.  In contrast, some samples from Defendant's products had one hundred twenty times (120x) as much manganese as nickel.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there must be very little Kona in this package.  In other words, Hawaiian Isles' designation of Kona as the origin of the coffee in these products was false.

39.    Even a consumer understanding this package to be a blend of Kona and other coffees (which is a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.  Given the deviation in the concentration ratios, though, it is implausible that this package met those consumer expectations.

**CLASS ALLEGATIONS**

40.    Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

41.    Plaintiff also seeks to represent a subclass of all Class members who purchased the Products in Hawaii (the "Hawaii Subclass").  Excluded from the Hawaii Subclass are persons who made such purchases for purpose of resale.

42.    At this time, Plaintiff does not know the exact number of members of the Class and Hawaii Subclass; however, given the nature of the claims and the number of retail stores in the United States selling the Products, Plaintiff believes that Class and Hawaii Subclass members are so numerous that joinder of all members is impracticable.

43.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

a.    The chemical composition of a real Kona coffee bean, as established through elemental abundance analysis and isotopic analysis;

b.    The chemical composition of the coffee beans sold by Defendant, also as established through elemental abundance analysis and isotopic analysis;

c.    Whether Defendant made false or misleading representations as to the geographic origin of coffee labeled and sold as "Kona" coffee;

d.    Whether the Defendant's marketing, distribution, and/or sale of products falsely or misleadingly labeled as "Kona" coffee has created or is likely to mislead a reasonable consumer;

e.    Whether the Defendant's false or misleading representations as to the geographic origin of coffee labeled and sold as "Kona" coffee violate Hawaii's UDAP, FAL, UDTPA, and False Labeling of Hawaii-Grown Coffee Law;

f.  The nature and extent of the damages to Plaintiff and the Class members;

g.  The nature and extent of Defendant's profits earned as a result of falsely or misleadingly designating "Kona" as the origin of its coffee products;

h.  Whether Defendant's conduct was unfair and/or deceptive;

i.  Whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class;

j.  Whether Defendant breached express warranties to Plaintiff and the Class; and

k.  Whether Plaintiff and the Class have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of its damages.

44.    Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased, in a typical consumer setting, the Kona Labeled Coffee Products and Plaintiff sustained damages from Defendant's wrongful conduct.

45.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Class or the Hawaii Subclass.

46.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

47.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the

Class and the Hawaii Subclass, thereby making appropriate equitable relief with respect to the Class and the Hawaii Subclass as a whole.

48.     The prosecution of separate actions by members of the Class and the Hawaii Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and the Hawaii Subclass even where certain Class members are not parties to such actions.

## CAUSES OF ACTION

### COUNT I
### Violation of Hawaii's Unfair Deceptive Acts or Practices Statute
### H.R.S. § 480-1, *et seq.*

49.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

50.     Plaintiff brings this cause of action on behalf of himself and members of the Class and the Hawaii Subclass.

51.     This cause of action is brought pursuant to Hawaii's Unfair Deceptive Acts and Practices Statute ("UDAP"), H.R.S. § 480-1, *et seq.*

52.      Plaintiff and the other members of the Class and the Hawaii Subclass are "consumers," as the term is defined by H.R.S. § 480-1 because they are natural persons who, primarily for personal, family, or household purposes, purchased Kona Labeled Coffee Products.

53.     The conduct alleged in this Complaint constitutes unfair and deceptive acts and practices for the purpose of the UDAP because the conduct was undertaken by Defendant in the conduct of its trade and commerce.

54.    Plaintiff purchased the Kona Labeled Coffee Products during the statute of limitations period.  With respect to these purchases, Plaintiff reasonably believed that the Kona Labeled Coffee Products were comprised entirely of beans from the Kona District of Hawaii.  Plaintiff's belief in this regard was reasonable because the "Kona" representation and accompanying Hawaiian imagery and references printed on the front packaging of the Kona Labeled Coffee Products are likely to deceive a reasonable consumer into believing the Products are comprised entirely of beans from the Kona District of Hawaii.  Plaintiff would not have made this purchase, or would have paid less for the Kona Labeled Coffee Products, had he known that they were not made entirely from true Kona coffee beans, but instead contained beans from less desirable growing regions.  The same is true for members of the Class and the Hawaii Subclass.

55.    As alleged more fully above, Defendant has violated the UDAP by marketing the Kona Labeled Coffee Products as originating from the Kona District, when in fact the Products do not originate from the Kona District; instead, the products are mostly or exclusively comprised of commodity beans and/or beans from less-desirable regions.

56.    As a result of engaging in such conduct, Defendant has violated H.R.S. § 480-2, which declares "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" to be unlawful.

57.    A practice is "unfair" under the UDAP when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  *See Balthazar v. Verizon Haw., Inc.*, 109 Haw. 69, 77, 123 P.3d 194, 202 (2005).

58.    Defendant's conduct was of no benefit to purchasers of the Kona Labeled Coffee Products who rely on the packaging and marketing of the Products

in making purchasing decisions. Creating consumer confusion as to the actual location of where the product is made and the characteristics of the product is of no benefit to consumers.  Moreover, representing that the Kona Labeled Coffee Products were true Kona coffee when they were not is injurious to consumers because it deceived them into purchasing a product under the belief that it possessed a characteristic that it simply did not possess.  Indeed, Plaintiff believed that the Kona Labeled Coffee Products he purchased were true Kona coffee beans based on Defendant's false, deceptive, and misleading representations, including the Hawaiian imagery and the "Kona" representation, prominently printed on the front packaging of these products. Plaintiff and the Class and Hawaii Subclass members would not have purchased the Kona Labeled Coffee Products, or would have paid less for them, had they known that the Kona Labeled Coffee Products are mostly or exclusively comprised of commodity beans and/or beans from less-desirable regions.  As a result, Defendant's conduct is substantially injurious to consumers, including Plaintiff, and such conduct was "unfair."

59.    An act or practice is "deceptive" under the UDAP when it consists of a representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances and when the representation, omission, or practice is material.  *See Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262, 141 P.3d 427, 434 (2006).  A representation, omission, or practice is considered material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.  *See id.*

60.    As alleged herein, Defendant's conduct was deceptive because it had the effect of deceiving consumers into believing that the Kona Labeled Coffee Products were made entirely from coffee beans grown in the Kona District of Hawaii, when they were not.  The "Kona" representation and accompanying Hawaiian imagery and references printed on the front packaging of the Kona

Labeled Coffee Products were representations that were likely to be interpreted by a reasonable consumer to mean that the Kona Labeled Coffee Products were true Kona coffee beans.  The belief that the Kona Labeled Coffee Products were made from coffee beans grown in the Kona District of Hawaii was material because it was important to consumers and influenced Plaintiff's and the Class and the Hawaii Subclass members' decision to purchase the Kona Labeled Coffee Products.  Specifically, Plaintiff and the Class and the Hawaii Subclass members would not have purchased the Kona Labeled Coffee Products, or would have paid less for the Kona Labeled Coffee Products, had they known that Kona Labeled Coffee Products were not comprised entirely of beans grown in the Kona District of Hawaii.  Because Defendant – through its packaging and advertising of the Kona Labeled Coffee Products – misled Plaintiff and members of the Class and the Hawaii Subclass into believing the Kona Labeled Coffee Products were made from coffee beans grown in the Kona District of Hawaii, and this caused financial injury to them by inducing purchases that would not have occurred and/or caused them to pay more for the Kona Labeled Coffee Products than they otherwise would have, Defendant's conduct was and is "deceptive."

61.    Furthermore, Defendant's conduct was unlawful *per se*: Coffee grown outside of the Kona District, even if grown within the state of Hawaii, cannot be sold as Kona coffee.  *See, e.g.,* H.R.S. § 708-871.5 and H.A.R. § 4-143-1. Defendant has violated this law by marketing the Kona Labeled Coffee Products were true Kona coffee beans, when they in fact contained little or no true Kona coffee beans.

62.    In sum, each of the elements for a claim brought pursuant to H.R.S. § 480-13 is satisfied, in that: (1) Defendant has violated H.R.S. § 480-2(a) by committing unfair and deceptive business acts and practices, as set forth above, (2) these unfair and deceptive business acts and practices caused Plaintiff and the

Class and the Hawaii Subclass members financial harm by inducing purchases that would not have occurred and/or caused them to pay more for the Kona Labeled Coffee Products than they otherwise would have, (3) damages to Plaintiff and the Class and the Hawaii Subclass members can be proven on class-wide basis, and (4) this action is in the public interest because Defendant's unfair and deceptive business acts and practices have caused harm to all consumers, and Defendant is a merchant that sells the Kona Labeled Coffee Products for profit.

63.     Plaintiff seeks to enjoin the sale of the Kona Labeled Coffee Products pursuant to H.R.S. § 480-13(a)(2), or to require Defendant to refrain from misleading consumers into believing the Products originate from the Kona District

64.     Pursuant to H.R.S. § 480-13(a)(1), Plaintiff also seeks compensatory damages of threefold the damages incurred by himself and the Class and the Hawaii Subclass in purchasing the Kona Labeled Coffee Products, as well as reasonable attorney's fees together with the costs of suit.

<u>**COUNT II**</u>
**Violation of Hawaii's Uniform Deceptive Trade Practices Act**
**H.R.S. § 481A, *et seq.***

65.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

66.     Plaintiff brings this cause of action on behalf of himself and members of the Class and the Hawaii Subclass.

67.     By committing the acts and practices alleged herein, Defendant has violated Hawaii's Uniform Deceptive Trade Practices Act ("UDTPA"), H.R.S. § 481A, et seq, as to the Class and the Hawaii Subclass.

68.     Defendant is a "person" under H.R.S. § 481A-2 because it is a corporation.

69.    Pursuant to Hawaii's UDTPA, Defendant has engaged in deceptive trade by engaging in the following conduct:

    a.  Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services. *See* H.R.S. § 481A-3(a)(2).  Defendant has caused a significant likelihood of confusion or misunderstanding that the source of the Kona Labeled Coffee Products is Kona, Hawaii, when it is not;

    b.  Using deceptive representations or designations of geographic origin in connection with goods or services.  *See* H.R.S. § 481A-3(a)(4). Defendant has used deceptive representations and designations of the product's geographical origin (representing the Kona Labeled Coffee Products and comprised entirely of coffee beans grown in the Kona District of Hawaii, when they were not);

    c.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.  *See* H.R.S. § 481A-3(a)(5).  Defendant has represented that the Kona Labeled Coffee Products had the unique, highly sought-after characteristic flavor of true Kona coffee, when they in fact did not;

    d.  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.  *See* H.R.S. § 481A-3(a)(7).  Defendant has represented that the products were true Kona coffee (which can only be grown in the Kona District of Hawaii), when in fact they were mostly, if not entirely, comprised of beans from less-desirable coffee growing regions; and

e.  Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." *See* H.R.S. § 481A-3(a)(7).  By packaging and marketing the Kona Labeled Coffee Products as true Kona coffee, Defendant has engaged in conduct that has created confusion and misunderstanding about the geographic origin of the Kona Labeled Coffee Products.

70.    At all relevant times, Defendant has known or reasonably should have known that the Kona Labeled Coffee Products are not grown in the Kona District of Hawaii, but instead were sourced from other less desirable growing regions, and that Plaintiff and other members of the Class and the Hawaii Subclass would reasonably and justifiably rely on the packaging and other advertisements in purchasing the Kona Labeled Coffee Products.

71.    Plaintiff and members of the Class and the Hawaii Subclass have reasonably and justifiably relied on Defendant's misleading, and fraudulent conduct when purchasing the Kona Labeled Coffee Products.  With respect to Plaintiff's purchases, Plaintiff reasonably believed that the Kona Labeled Coffee Products were comprised entirely of beans from the Kona District of Hawaii. Plaintiff's belief in this regard was reasonable because the "Kona" representation and accompanying Hawaiian imagery and references printed on the packaging and marketing materials of the Kona Labeled Coffee Products.  Plaintiff would not have made this purchase, or would have paid less for the Kona Labeled Coffee Products, had he known that the Kona Labeled Coffee Products are not true Kona coffee.  The same is true for members of the Class and the Hawaii Subclass.

72.    Moreover, based on the materiality of Defendant's deceptive and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the products may be presumed or inferred for Plaintiff and members of the Class and the Hawaii Subclass.

73.     Under H.R.S. § 481A-4, Plaintiff and members of the Class and the Hawaii Subclass are seeking injunctive relief, preventing Defendant from continuing to engage in the wrongful acts and unfair and unlawful business practices described herein.  Plaintiff also seeks attorneys' fees and costs and all other remedies this Court deems proper pursuant to H.R.S. § 481A-4.

## COUNT III
### Violation of Hawaii's False Advertising Law
### H.R.S. § 708-871, *et seq.*

74.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

75.     Plaintiff brings this cause of action on behalf of himself and members of the Class and the Hawaii Subclass.

76.     Hawaii's False Advertising Law ("FAL") provides that:

A person commits the offense of false advertising if, in connection with the promotion of the sale of property or services, the person knowingly or recklessly makes or causes to be made a false or misleading statement in any advertisement addressed to the public or to a substantial number of persons.

H.R.S. § 708-871.

77.     Defendant has knowingly and recklessly made false and misleading statements to the public, including Plaintiff and members of the Hawaii, through Defendant's deceptive packaging and marketing, that the Kona Labeled Coffee Products were comprised entirely of beans grown in from the Kona District of Hawaii.  Defendant's representations were misleading because the coffee contained in the Kona Labeled Coffee Products did not originate from the Kona District.  Because Defendant has disseminated misleading information regarding the Kona Labeled Coffee Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representation was misleading, Defendant has violated the FAL.

78.     Furthermore, Defendant knows, knew or should have known through the exercise of reasonable care that such representation was unauthorized and misleading.

79.     As a result of Defendant's false advertising, Defendant has fraudulently obtained money from Plaintiff and members of the Class and the Hawaii Subclass.

80.     Plaintiff requests that this Court cause Defendant to restore this fraudulently obtained money to Plaintiff and members of the Class and the Hawaii Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff and members of the Class and the Hawaii Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT IV
### Violation of Hawaii's False Labeling of Hawaii-Grown Coffee Law
### H.R.S. § 708-871.5

81.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

82.     Plaintiff brings this cause of action on behalf of himself and members of the Class and the Hawaii Subclass.

83.     Hawaii's False Labeling of Hawaii-Grown Coffee Law provides that:

A person commits the offense of false labeling of Hawaii-grown coffee if the person knowingly transports, distributes, advertises, sells, or possesses with the intent to sell Hawaii-grown green coffee, cherry coffee, or parchment coffee that is ***falsely labeled with regard to the geographic origin of the Hawaii-grown coffee***.

H.R.S. § 708-871.5(1).

84.    The statute defines Kona as "the north Kona and south Kona districts on the island of Hawaii, as designated by the State of Hawaii tax map."  H.R.S. § 708-871.5(2)(e).

85.    Defendant has knowingly and recklessly made false and misleading statements with regard to the geographic origin of Hawaii-grown coffee to the public, including Plaintiff and members of the Hawaii, through Defendant's deceptive packaging and marketing, that the Kona Labeled Coffee Products were comprised entirely of beans grown in from the Kona District of Hawaii. Defendant's representations were misleading because the coffee contained in the Kona Labeled Coffee Products did not originate from the Kona District.  Because Defendant has disseminated misleading information regarding the Kona Labeled Coffee Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representation was misleading, Defendant has violated the Hawaii False Labeling of Hawaii-Grown Coffee Law.

86.    As a result of Defendant's violation of Hawaii's False Labeling of Hawaii-Grown Coffee Law, Defendant has fraudulently obtained money from Plaintiff and members of the Class and the Hawaii Subclass.

87.    Plaintiff also seeks compensatory damages on behalf of himself and the Class and the Hawaii Subclass as a result of purchasing the Kona Labeled Coffee Products, as well as reasonable attorney's fees together with the costs of suit.

## COUNT V
### (Fraud)

88.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

89.    Plaintiff brings this claim individually and on behalf of the members of the Class and Class and the Hawaii Subclass against Defendant.

90.     As discussed above, Defendant represented the Kona Labeled Coffee Products as originating from the Kona District, when in fact the Products do not originate from the Kona District; instead, they are mostly or exclusively comprised of commodity beans and/or beans from less-desirable regions.

91.     The false and misleading representations and omissions were made with knowledge of their falsehood.

92.     The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the Class and Hawaii Subclass reasonably and justifiably relied and were intended to induce and actually induced Plaintiff and Class members to purchase the Kona Labeled Coffee Products.

93.     The fraudulent actions of defendant caused damage to Plaintiff and members of the Class, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VI
### (Negligent Misrepresentation)

94.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

95.     Plaintiff brings this claim individually and on behalf of the members of the Class and Class and the Hawaii Subclass against Defendant.

96.     As discussed above, Defendant represented the Kona Labeled Coffee Products as originating from the Kona District, when in fact the Products did not originate from the Kona District but instead are mostly or exclusively comprised of commodity beans and/or beans from less-desirable regions.

97.     At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

98.    At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Kona Labeled Coffee Products.

99.    The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Kona Labeled Coffee Products.

100.    Plaintiff and Class members would not have purchased the Kona Labeled Coffee Products if the true facts had been known.

101.    The negligent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VII
### (Unjust Enrichment)

102.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

103.    Plaintiff brings this claim individually and on behalf of members of the Class and Hawaii Subclass against Defendant.

104.    Plaintiff and Class members conferred benefits on Defendant by purchasing the Kona Labeled Coffee Products.

105.    Defendant has knowledge of such benefits.

106.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Kona Labeled Coffee Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant fraudulently represented in advertising and on packaging that the Products originated from the Kona District when in fact the Products do not originate from the Kona District; instead, the products are mostly

or exclusively comprised of commodity beans and/or beans from less-desirable regions

107.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT VIII
### (Breach of Express Warranty)

108.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

109.    Plaintiff bring this claim individually and on behalf of the members of the Class and Hawaii Subclass against Defendant.

110.    Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. Furthermore, any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

111.    Defendant, as the designer, manufacturer, marketer, distributor, and seller made affirmations as to the origin, quality and contents of the Kona Labeled Coffee Products with the prominent placement of "Kona" on the Products.  The "Kona" description also creates an express warranty that the Kona Labeled Coffee Products will conform to that description.

112.    As established through the scientific testing to date, the coffee contained in the accused products does not conform to such affirmations of fact and/or descriptions of the "Kona" coffee products at issue.

113.    Plaintiff and members of the Class reasonably and justifiably relied on the forgoing express warranties, believing that the accused coffee products

purchased from Defendant conformed to these express warranties.  Plaintiff and members of the Class did not obtain the full value of the products as represented on the labels, packaging and marketing materials.  If Plaintiff and members of the Class had known of the Kona Labeled Coffee Products were commodity beans and/or sourced from less-desirable regions, they would not have purchased the products, or they would not have been willing to pay the inflated price.

114.    Plaintiff and the Class members were injured as a direct and proximate result of Defendant's breach because:  (a) they would not have purchased the Products on the same terms if the truth concerning Defendant's Products had been known; (b) they paid a price premium due to Defendant's misrepresentations about the Products; and (c) the Products were not of the quality or nature promised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of himself and members of the Class and Hawaii Subclass as follows:

A.    For an order certifying the nationwide Class and the Hawaii Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Hawaii Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Hawaii Subclass members;

B.    For an order declaring that Defendant's conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiff, the nationwide Class, and the Hawaii Subclass on all counts asserted herein;

D.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.    For injunctive relief enjoining the illegals acts detailed herein;

F.    For prejudgment interest on all amounts awarded;

G.    For an order of restitution and all other forms of equitable
monetary relief;

H.    For an order awarding Plaintiff and the Class and Hawaii
Subclass their reasonable attorneys' fees and expenses and
costs of suit.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 14, 2020            Respectfully submitted,

**BERVAR & JONES**


By:_____*/s/ Birney B. Bervar*_____
        Birney B. Bervar

**BURSOR & FISHER, P.A.**
L. Timothy Fisher
Blair E. Reed

**REICH RADCLIFFE & HOOVER LLP**
Marc G. Reich
Adam T. Hoover

*Counsel for Plaintiff*